Miles A. HERNLY,
Petitioner–Appellant,

v.

The UNITED STATES of America,
Respondent–Appellee.

No. 85–2316.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1986.

Decided Oct. 15, 1987.

Robert B. Keene, Tabbert & Capehard, Indianapolis, Ind., for petitioner-appellant.

Gary D. Gray, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

This is an appeal from an order of the District Court for the Northern District of Indiana quashing a subpoena requiring IRS Agent Johnson to be deposed in a civil action pending in the Southern District of Indiana.[1]

Appellant Miles Hernly is one of six defendants named Hernly in the civil action. The Hernly defendants wished to examine Agent Johnson concerning a statement in a Report that Johnson had prepared in an income tax investigation. The government moved to quash the subpoena, asserting that any relevant information known by Agent Johnson would have been obtained by him as a result of a grand jury investigation and that disclosure is prohibited by Rule 6(e)(2), F.R.Crim.P.[2]

It appears that Agent Johnson had obtained access to the record of a Northern District grand jury investigation under a 1977 order of the district court. Judge McNagny had, pursuant to Rule 6(e), F.R. Crim.P., granted the IRS access to subpoenaed books and records and transcripts of the grand jury proceeding for the purpose of determining whether civil tax liabilities were due.

As Judge Moody noted in the present proceeding, the Supreme Court later held (affirming a judgment of this court) that disclosure for that purpose is not authorized by Rule 6(e)(3)(C)(i). *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). Judge Moody reviewed the public policy reasons for preserving the secrecy of grand jury proceedings and the decisions requiring a showing of particularized need before such disclosure. He decided,

[w]hile Johnson's knowledge and use of the information cannot now be erased, it would be a grave mistake to allow such information to enter into the public domain through a trial deposition. The defendants may, of course, seek to obtain the information directly through a motion directed to the grand jury. If so, they must prove the requisite "particularized need"

. . . .

When the Hernly defendants filed their opposition to the motion to quash their subpoena, they also filed what they entitled "Motion for Disclosure of Proceeding Before a Grand Jury." In the text, however, they requested only that Agent Johnson be authorized to disclose the information he had gathered. The order granting the motion to quash did not refer to the motion for disclosure, but it seems clear that it was impliedly found wanting and denied. Miles Hernly appealed.

It would be difficult to fault Judge Moody's conclusion that the disclosure to the IRS, authorized for a purpose later deemed inappropriate in *Baggot*, does not, in itself, warrant wider disclosure. *Cf. United States v. Sells Engineering, Inc.*, 463 U.S. 418, 422 n. 6, 103 S.Ct. 3133, 3137 n. 6, 77 L.Ed.2d 743 (1983). It also seems clear, though by implication, that Judge Moody did not believe the Hernly defendants had shown particularized need for disclosure of grand jury materials.

Appellant contends, however, that they demonstrated that the need for disclosure

---

1. This court has previously decided that it has jurisdiction. The order appealed from was deemed final "because it was entered in a different district court from where the main action is pending." *Hernly v. United States*, No. 85–2316, unpublished order (Aug. 28, 1985), *citing Carter Products, Inc. v. Eversharp, Inc.*, 360 F.2d 868 (7th Cir.1966).

2. The government also asserted that disclosure of the information would be prohibited by 26 U.S.C. § 6103. Neither the district court nor we have reached this proposition.

to prevent injustice is greater than any remaining need for secrecy, and that the district court abused its discretion in quashing the subpoena. He argues, further, that the information requested does not constitute matters occurring before the grand jury. We consider, but reject, these arguments.

## A. BACKGROUND

In 1980, Basic Earth Science Systems, Inc. (Basic) brought suit against the Hernly defendants and three others seeking $3,000,000 compensatory damages and $1,000,000 punitive damages. In June, 1972, by a stock-for-stock exchange, Hernly Brothers, Inc. and Fitzgerald & Stutz, Inc. had become wholly owned subsidiaries of Basic. Then and prior thereto, the Hernly defendants had been officers and directors of Hernly Brothers, Inc., and the other three defendants had been officers and directors of Fitzgerald & Stutz, Inc.

In 1969, Hernly Brothers, Inc. and Fitzgerald & Stutz, Inc. had formed a joint venture to bid on a sewer construction project in East Chicago, Indiana. Corrupt activities in that connection resulted in the grand jury proceeding at issue here and in the indictment and conviction of Fitzgerald, of Fitzgerald & Stutz, Inc., the superintendent of the Board of Sanitary Commissioners, a friend of his with political influence, and two other persons. Miles Hernly, who was president of Hernly Brothers, was named as an unindicted conspirator, received immunity, and testified for the government. *See United States v. Fitzgerald*, 579 F.2d 1014 (7th Cir.1978). It appears from that opinion that Basic (referred to by its acronym BESSI) was involved in 1971 in an arrangement to transfer two of the shares of the sewer project profits. 579 F.2d at 1018.

In the present complaint, Basic alleged that defendants had conspired to defraud their corporations, East Chicago, and income taxing authorities by embezzling $3,000,000 received on the East Chicago contract; that Basic had first learned these facts when the indictment was returned in 1976; that the two corporations had treated the East Chicago contract as incomplete on June 20, 1972 when they became Basic's wholly owned subsidiaries; that Basic filed a consolidated return for the period from June 20, 1972 to March 31, 1973, including income of the subsidiaries on the East Chicago contract; that in June, 1978, the IRS informed Basic it intended to assert an income tax deficiency against it in excess of $2,800,000, plus interest and penalties thereon. It appears the assessment was made in 1981. Basic alleges defendants fraudulently concealed the embezzlements from Basic at the time Basic acquired the stock of the two corporations and that it has been damaged to the extent of the income tax deficiencies, penalty and interest. The complaint contains counts on theories of breach of warranty and agreed indemnity as well.

Among numerous defenses, the Hernly defendants allege that Count I of the complaint is barred by the Indiana six year statute of limitations, and allege that Basic knew all the facts it now alleges before it agreed to acquire the Hernly and Fitzgerald corporations as subsidiaries.

The Hernly defendants sought the grand jury materials as help in proving the knowledge of Basic's officers in 1972.

In support of their claim of right to depose Agent Johnson, the Hernly defendants asserted that in discovery they had obtained a copy of Agent Johnson's Revenue Agent's Report. In explaining assessment of a civil fraud penalty, the Report contained the following statement:

Basic Earth Science Systems, Inc. evaded its income tax when it filed a false and fraudulent 7303 consolidated tax return, Form 1120, wherein taxable income was knowingly and purposely understated. This fraudulent conduct was performed through the acts of its directors, officers, and substantial shareholders, Grant W. Breuer, George Kimmey, Charles Fitzgerald, and Miles Hernly.

The report went on to describe two methods used. One "understatement of earnings was accomplished by intentionally using false deductions totaling approximately $2,800,000 in arriving at the reported part-

nership profits from the East Chicago Sewer Project." A second method did not appear to involve the East Chicago project, but rather improprieties in accounting for an oil exploration venture, called Columbine Three, in which Basic was general partner and the two subsidiaries were limited partners.

Presumably Agent Johnson saw something in a grand jury transcript or a document from which he inferred that Breuer and Kimmey, officers of Basic in 1973, knew that the deductions referred to were false. We surmise that these deductions were those contrived to cover the embezzlements. *See* 579 F.2d at 1017. Testimony or documents supporting that inference would be relevant to the Hernly defense.

■ But one seeking disclosure of grand jury proceedings must demonstrate more than relevance; he must show necessity to prevent injustice. *United States v. Procter & Gamble*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

Miles Hernly had personal knowledge of many relevant facts, and his testimony is available. He participated in many of the pertinent transactions, and testified at length in the trial of the criminal case. He is doubtless aware of others who have direct knowledge. Basic and Hernly Brothers, Inc. seem to have had a close relationship for a period of time before Basic became the parent. There was evidence at trial that during this period they were partners in a joint venture formed to transfer shares of the sewer project profits to two of the conspirators. 579 F.2d at 1018. Presumably the Hernly defendants had knowledge or information on which they based the allegation in their answer that Basic had knowledge of the pertinent facts before agreeing to acquire the stock of the Hernly and Fitzgerald corporations.

Nowhere in this proceeding, however, did the Hernly defendants indicate which relevant facts as to Basic's knowledge were outside Miles Hernly's personal knowledge. They did not suggest the identities of other persons with knowledge and show they were not available as witnesses. They did not describe the discovery undertaken in this area, nor its outcome. It was only in oral argument on appeal that Hernly indicated that Breuer and Kimmey had previously been deposed and had denied knowledge of fraud. If they were permitted to examine Johnson, he could guide them to the testimony or documents upon which he based his conclusions. It is most improbable, however, that he could give admissible testimony as to Breuer and Kimmey's guilty knowledge.

The Hernly defendants went so far in supporting their claim as to argue that if they were to find evidence that Johnson's conclusion was wrong, and that Breuer and Kimmey were not involved in any fraudulent conduct, then the statute of limitations would have run on the IRS claim of fraudulent deficiency, and the assessment would fail entirely, benefitting Basic as well as defendants. This last contention emphasizes that the Hernly defendants were seeking discovery rather than showing the necessity of having specific testimony or documents in order to prove their pleaded version of the facts.

### B. HERNLY DEFENDANTS FAILED TO SHOW NECESSITY OF DISCLOSURE IN ORDER TO PREVENT INJUSTICE

■ Rule 6(e)(2) of the Federal Rules of Criminal Procedure prohibits disclosure of "matters occurring before the grand jury, except as otherwise provided for in these rules." Rule 6(e)(3)(C)(i) provides that:

[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding....

The provision of the Rule is brief, but in application one must consider much judicial gloss.

There is a "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). This public policy serves "to en-

courage all witnesses to step forward and testify freely without fear of retaliation." *Id.* at 682, 78 S.Ct. at 986. Grand jury secrecy is maintained because "[t]he grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *Id.* To preserve the institution, the secrecy is not broken "except where there is a compelling necessity" for the material. Such necessity "must be shown with particularity." *Id.* In *Procter & Gamble,* relevancy and usefulness to another case were not enough to require disclosure of grand jury materials. The party seeking disclosure had to provide "proof that without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done." *Id.*

In *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), the Supreme Court reiterated the need to preserve grand jury secrecy. The Court enumerated the interests served as encouraging witnesses to come forward voluntarily and "testify fully and frankly," preventing those about to be indicted from fleeing or trying to influence grand jurors, and insuring that persons accused but exonerated not be held up to public ridicule. *Id.* at 219, 99 S.Ct. at 1672. The Court also emphasized that:

> [p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations....

*Id.* at 222, 99 S.Ct. at 1674.

District courts that contemplate ordering disclosure must consider the "possible effect upon the functioning of future grand juries." *Id.* Although "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification" for their disclosure, the interests in secrecy are "not eliminated merely because the grand jury has ended its activities." *Id.* at 222–23, 99 S.Ct. at 1674–75. In determining whether the party requesting disclosure has met his burden, the district court has "substantial discretion." *Id.*

The standard set forth in *Douglas Oil* "is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 445, 103 S.Ct. 3133, 3149, 77 L.Ed.2d 743 (1983). While recognizing that the standard "accommodates any relevant considerations," *id.* at 445, 103 S.Ct. at 3149, the Court again construed Rule 6(e) "to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *Id.* at 443, 103 S.Ct. at 3148.

The Seventh Circuit has interpreted the general rule of grand jury secrecy consistently with the decisions of the Supreme Court. *See In re Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d 1979 (7th Cir.1982).

In *Lucas v. Turner,* 725 F.2d 1095 (7th Cir.1984), involving a state grand jury, there was "an all-inclusive, sweeping request for *all* grand jury transcripts and exhibits relevant to the incarceration and death of George Lucas" to be used in a civil case brought by Lucas' survivors. 725 F.2d at 1101 (emphasis in original). Lucas had died while in custody as a pretrial detainee at the Cook County Jail. *Id.* at 1096. The petitioner sought testimony given before a grand jury by witnesses to Lucas' death. *Id.* at 1098. In determining whether the petitioner had shown particularized need, the court asked whether disclosure was necessary to avoid injustice. *Id.* at 1102. The court noted that the attorney could obtain "information which is absolutely necessary rather than simply beneficial to their [case]" if he had shown that the information "could not have been obtained through normal discovery channels."

*Id.* Saving time and expense of discovery would not justify disclosure and subpoenas for such disclosure should not be used as a substitute for discovery. *Id.* at 1103, 1106. The court also emphasized that when the veil of secrecy is lifted, it should be lifted "discretely and limitedly." *Id.* at 1101 (quoting *Procter & Gamble, supra*).

The consensus appears to be that whoever requests grand jury materials must show particularized need in order to obtain them. The petitioner must show that the materials are needed to avoid injustice in another judicial proceeding, must demonstrate that the need for disclosure is greater than the need for secrecy, and must structure the request to cover only those materials needed. *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674. This standard is a flexible one, so that as the requirements of grand jury secrecy diminish, the petitioner has a lower burden in showing particularized need. *Sells Engineering,* 463 U.S. at 445, 103 S.Ct. at 3149. But the requirement that he show that the materials are necessary to avoid injustice is only diminished; it is not abrogated altogether.

The district court has broad discretion in determining whether a petitioner has made a sufficient showing of particularized need.

█ We find no abuse of discretion here. Appellant Hernly points out that the criminal case was concluded many years ago and that those who were convicted have served their sentences. He argues that most of the reasons for secrecy no longer apply. *See United States v. Rose,* 215 F.2d 617, 628–29 (3rd Cir.1954), *quoted in Procter & Gamble,* 356 U.S. at 681–82 n. 6, 78 S.Ct. at 986 n. 6. The need for secrecy, however, is not erased. At least the most general reason remains, "(4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes."

Although it can happen that the need for secrecy may be accorded less weight than the need for disclosure, the latter must have been shown to exist, and a "strong showing" is required. 463 U.S. at 443, 103 S.Ct. at 3148. The Hernly defendants failed to make that showing. It is doubt-

less true that whatever the information on which Agent Johnson based his conclusion is relevant to the Hernly defense, but a showing of relevance is not enough. 356 U.S. at 682, 78 S.Ct. at 986.

## C. MATTERS OCCURRING BEFORE THE GRAND JURY ARE PRESUMABLY INVOLVED

█ Appellant Hernly argues that "The Information Requested Does Not Constitute Matters Occurring Before The Grand Jury." In substance, he relies on decisions approving disclosure of documents which had been before a grand jury where production of the documents would not, under the circumstances, reveal anything to which the policy of secrecy applies. "If a document is sought for its own sake rather than to learn what took place before the grand jury, and if its release will not seriously compromise the secrecy of the grand jury's deliberations, Rule 6(e) does not forbid its release." *Matter of Special March 1981 Grand Jury,* 753 F.2d 575, 578 (7th Cir.1985), and cases there cited.

The difficulty with the argument is that there is nothing to indicate that the information on which Agent Johnson based his conclusion was contained in a document. Indeed it seems highly improbable that evidence of knowledge of embezzlement of millions and the falsity of expenditures contrived as deductions to cover the embezzlements would appear in a document, or at least the type of document unlikely to invoke secrecy considerations.

The order appealed from is AFFIRMED.