942 F.2d 1195
 In the Matter of GRAND JURY PROCEEDINGS, SPECIAL SEPTEMBER, 1986.
Appeals of Chester L. BLAIR and Reverend Gertha Wainwright, Appellants,
v.
ADMINISTRATOR OF the ILLINOIS ATTORNEY REGISTRATION AND
DISCIPLINARY COMMISSION, Appellee.
 Nos. 90-2088, 90-2133.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 14, 1990.
Decided Sept. 11, 1991.
 
 Leonard Ring (argued), Ring & Associates, Chicago, Ill., for appellant, Chester L. Blair.
 Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Robert P. Vogt (argued), Burditt & Radzius, Chicago, Ill., for appellee, U.S.
 Robert P. Vogt, Burditt & Radzius, James J. Grogan, Naomi J. Woloshin (argued), Atty. Registration & Disciplinary Com'n, Chicago, Ill., for appellee John C. O'Malley.
 James D. Montgomery, Montgomery & Associates, Chicago, Ill., for appellant Gertha Wainwright.
 Before BAUER, Chief Judge, and POSNER and KANNE, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 In this appeal, we review the order of the district court granting the disclosure of certain grand jury testimony to the Administrator (the "Administrator") of the Illinois Attorney Registration and Disciplinary Commission (the "ARDC"). Because we determine that the district court abused its discretion in ordering the release of the testimony, we reverse the disclosure order and remand the case for further consideration.
 
 I.
 
 2
 On July 29, 1988, the Administrator filed a first amended complaint against Illinois attorney Chester A. Blair with the ARDC's Hearing Board. The complaint contained four counts: the first two focused on Blair's representation of Lazetta Triplet in her attempt to collect death benefits on two policies insuring the life of her late husband, Benny Triplet; the third count concerned the manner in which Blair resolved a fee dispute with Triplet that arose after the insurance companies paid their policy proceeds; and the fourth count--the only count relevant to this appeal--alleged that Blair twice paid Triplet $500 to induce her to inform the ARDC that she did not want to pursue the disciplinary complaint against Blair that she had filed during the course of the fee dispute. In her complaint to the ARDC, which triggered the Administrator's amended complaint to the Hearing Board, Triplet named the Reverend Gertha Wainwright as the person through whom Blair had sent the money. Blair denied that he sent Triplet any money, either directly or through an intermediary.
 
 
 3
 During the course of discovery in the disciplinary proceeding, Wainwright was served with a subpoena compelling her attendance at a discovery deposition. At that time, Wainwright declined to answer any questions relating to Blair or Triplet and asserted her fifth amendment privilege against self-incrimination. Subsequently, Wainwright was subpoenaed to appear at a hearing before the Hearing Board on November 15, 1988. Shortly before the hearing was scheduled to take place, Wainwright, through her attorney, advised the Administrator that she again would assert her fifth amendment privilege if she were called as a witness. As a result, Wainwright was deemed unavailable for purposes of testifying at the hearing. The Administrator attempted to establish by other means that Blair surreptitiously had sent money to a witness in order to influence an ARDC proceeding.
 
 
 4
 On March 1, 1989, the Hearing Panel filed its report, recommending that the first amended complaint against Blair be dismissed. Even though the evidence demonstrated that Triplet had in fact received an Express Mail envelope containing five one-hundred dollar bills, and that the name "Wainwright" appeared on the records as the sender of the transmission, the Panel believed that the Administrator had not proven by clear and convincing evidence that Blair was involved in any misconduct. "We decline to infer," the Panel stated, "that [Blair caused] the deposit of five One Hundred and No/100 Dollar bills in an Express Mail envelope addressed to Triplet and identifying the sender as Wainwright.... Blair is Wainwright only if we believe the words of Triplet. We do not." See Illinois ARDC, Report and Recommendation of the Hearing Board, March 1, 1989, p. 29.
 
 
 5
 Roughly at the same time that these matters were taking place, a federal grand jury began investigating Blair ostensibly about the same matters at issue before the ARDC. Pursuant to that investigation, Wainwright testified before the Special September 1986 Grand Jury, under the cloak of immunity. Three months after Wainwright testified before the grand jury, the Administrator filed a motion pursuant to Rule 6(e)(3)(C)(i) of the Federal Rules of Criminal Procedure for access to her grand jury testimony. The district court continued the Administrator's motion on the ground that the federal grand jury investigation into Blair's conduct was still continuing and disclosure of Wainwright's testimony would compromise that investigation.
 
 
 6
 When the federal grand jury investigation was completed, and the Assistant United States Attorney informed the Administrator that no charges would be brought against Blair, the Administrator renewed his motion for access to Wainwright's testimony. The government did not object to the disclosure because it believed that the Administrator had demonstrated a particularized need for the testimony. On May 4, 1990, the district court ordered the government to disclose Wainwright's testimony. At the hearing on the motion, the court noted:
 
 
 7
 It seems to me, first of all, that there is a showing of a particularized need here. It is almost a classic case of particularized need. You actually had a trial so that you know the thought process of the trier of fact. It is not the usual situation where the movant is saying, "We might be able to make good use of this evidence," and someone challenging that assertion and saying, "Well, how do you really know this isn't going to get you over the top? It is not going to make any difference," and so on.
 
 
 8
 Here we know that the Hearing Board did not think the Administrator had a case because the case was based entirely on the testimony of Triplet plus some other circumstantial evidence that the Hearing Board did not think sufficient standing alone.
 
 
 9
 It appears to me from the Hearing Board decision that they may very well may have taken a differing view of the evidence had Wainwright corroborated the testimony of Triplet. Very often a bad witness can be bolstered by a good witness that all the bad things about the bad witness become irrelevant. It is so obvious that the witness is telling the truth that it does not make any difference that they have warts all over them.
 
 
 10
 Now whether that is going to be the situation here, I haven't the slightest idea.
 
 
 11
 Transcript of Proceedings at pp. 9-10.
 
 
 12
 Wainwright's counsel then suggested that the district judge review the transcript of Wainwright's testimony before ordering it produced. The court agreed, commenting:
 
 
 13
 Put it this way, if it could not possibly make any difference to the outcome of the proceeding, then I do not think it should be produced....
 
 
 14
 Let's assume, which, of course, I am assuming for purposes of this discussion, that the Wainwright testimony does indicate that it was Mr. Blair who was responsible for whatever it was [Wainwright] did in regard to those payments to Ms. Triplet. There, on that assumption, it seems to me that this ... evidence could change the result and arguably would avoid a miscarriage of justice in this other proceeding.
 
 
 15
 So I think there has, on that assumption, been a showing of a particularized need.
 
 
 16
 Id. at 11.
 
 
 17
 When the district court learned that it would take some time to produce the transcript of the Wainwright testimony for its review, the judge held an in camera conference with the Assistant United States Attorney, who claimed to have remembered the substance of Wainwright's testimony. After the Assistant informed him of the substance of the testimony, the judge ordered the release of Wainwright's testimony while expressing reservations about its utility:
 
 
 18
 Well, I am not sure from my conversation with [the Assistant United States Attorney] whether this is a piece of evidence that is going to be of use to the Administrator or not, but it may well be. Therefore, I am going to order disclosure of it.
 
 
 19
 I will tell you this, it is not what I anticipated it was going to be. It is something different, but it may well be that that also is of use, and I cannot make that determination for the parties to that litigation. They know more about it than I do. So I am going to order it be disclosed.
 
 
 20
 Id. at 18.
 
 
 21
 Blair filed a motion to stay the district court's order; Wainwright filed a motion to alter or amend the order. Although the district court refused to alter its order, it granted Blair's motion for a stay pending the outcome of this appeal. Both Blair and Wainwright appealed.
 
 II.
 
 22
 In this consolidated appeal, Blair and Wainwright present three arguments: that the Administrator failed to demonstrate particularized need; that the Administrator should have pursued the disclosure of Wainwright's testimony through less intrusive means; and that Wainwright's testimony, even if properly disclosed, still represents inadmissible hearsay. We need consider only their first and most potent contention. Blair and Wainwright maintain that the Administrator has not shown, as he is required to do under the governing caselaw, that the information he seeks is absolutely necessary, rather than just conceivably beneficial to his action. We agree. As the district court conceded after learning the substance of Wainwright's testimony, it is unclear whether the transcript will necessarily be of use to the Administrator. The fact that the transcript "may well be" of use is insufficient to justify intruding upon the sanctity of grand jury proceedings. The district court must make the determination that the transcript is, in fact, compellingly necessary to the party seeking disclosure.
 
 
 23
 Our judicial system consistently has recognized that the proper functioning of grand jury proceedings depends upon their absolute secrecy. See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). Since the 17th Century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye. Id. at 218 n. 9, 99 S.Ct. at 1672 n. 9. See generally Calkins, Grand Jury Secrecy, 63 Mich.L.Rev. 455, 457 (1965). The rule of grand jury secrecy is an integral part of our criminal justice system. Fed.R.Crim.P. 6(e) codifies the requirement that grand jury proceedings generally be kept secret:
 
 
 24
 A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made ... shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules.
 
 
 25
 The courts long have recognized several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Douglas Oil, 441 U.S. at 219, 99 S.Ct. at 1672. Moreover, witnesses who appear before the grand jury would be less likely to testify fully and frankly, as they would be open to both retribution and inducements. Second, there also would be the risk that those about to be indicted would flee, or would try to influence grand jurors to vote against indictment. Id. Finally, and perhaps most fundamentally, by preserving the secrecy of the proceedings, we assure that persons who are accused, but exonerated, by the grand jury will not be held up to public shame or ridicule. Id. See also United States v. Procter & Gamble Co., 356 U.S. 677, 681-82 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958).
 
 
 26
 Thus, to overcome these interests, the standard for determining when the traditional secrecy of the grand jury may be broken is deliberately stringent: parties seeking disclosure of grand jury transcripts must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Douglas Oil Co., 441 U.S. at 222, 99 S.Ct. at 1674. Put simply, the secrecy of the grand jury proceeding will not be broken except where the party seeking disclosure can show a "compelling necessity" or a "particularized need." Id. See also Matter of Grand Jury Proceedings, Miller Brewing Co., 687 F.2d 1079, 1088 (7th Cir.1982). We note that the determination of whether particularized need has been shown in any given case generally is left to the sound discretion of the district court and will not be reversed in the absence of an abuse of discretion. Matter of Grand Jury Proceedings, 687 F.2d at 1088.
 
 
 27
 In the instant case, the Administrator failed to demonstrate a particularized need for the Wainwright testimony. Instead, the Administrator simply appears to be fishing for testimony that possibly might produce evidence beneficial to the disciplinary action against Blair. Indeed, the district court virtually admitted that the Wainwright testimony did not fulfill a "compelling necessity" or a "particularized need": after reviewing the substance of the transcript with the Assistant United States Attorney, the court wondered aloud whether the Administrator would find the transcript to be of any use. The secrecy of a grand jury proceeding is not to be pierced by such a slender reed: a mere possibility of benefit does not satisfy the required showing of particularized need. See, e.g., Hernly v. United States, 832 F.2d 980 (7th Cir.1987) (disclosure properly denied where defendants in fraud action showed only that information sought was relevant to defense); Lucas v. Turner, 725 F.2d 1095 (7th Cir.1984) (disclosure improperly granted to plaintiff in civil rights action who sought access to grand jury transcripts of six correctional officers; the court remarked, "[S]ince the grand jury exonerated (i.e. chose not to indict) those defendants who were called before it, all the more reason exists to maintain the secrecy of the grand jury so that these defendants' reputation and privacy is not needlessly invaded.").
 
 
 28
 Although we recognize that the standard set forth in Douglas Oil is "highly flexible, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others," Hernly, 832 F.2d at 984 (quotations omitted), we nonetheless determine that several critical factors in this case weigh in favor of maintaining the secrecy of the grand jury proceedings at this time. First, Blair was not indicted by the grand jury, which, as we declared in Lucas, provides us with a compelling reason to preserve the confidentiality of Wainwright's testimony. As the Supreme Court long has recognized, "Grand jury secrecy ... is as important for the protection of the innocent as for the pursuit of the guilty." United States v. Sells Engineering, Inc., 463 U.S. 418, 424-25, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983) (quoted in Lucas, 725 F.2d at 1107.).
 
 
 29
 Second, the Administrator failed to address, and the district court neglected to consider, the impact that the release of Wainwright's testimony would have upon Wainwright. We note that Wainwright's testimony before the grand jury was compelled through a grant of immunity after she asserted her fifth amendment privilege not to testify. Releasing that testimony now under anything but a clear showing of particularized need by the Administrator may only subject Wainwright to needless scorn and ridicule, an unwarranted effect that could chill the efficacy of compelled testimony in the future. District courts that contemplate ordering disclosure must consider the possible effect upon the functioning of future grand juries. Hernly, 832 F.2d at 984 (quoting Douglas Oil, 441 U.S. at 222, 99 S.Ct. at 1674). We find that the district court did not adequately contemplate the impact of disclosure upon either Wainwright or the judicial system at large--did not, in fact, even see or read the transcript ordered disclosed. The transcript did not and, from the record before us, does not exist.[1]
 
 III.
 
 30
 For the foregoing reasons, we hold that the Administrator has not demonstrated that his particular need for the transcript of Wainwright's grand jury testimony is greater than the public interest in maintaining the secrecy of the grand jury proceeding. The district court abused its discretion by failing to require the Administrator to satisfy the clear standard set forth in Douglas Oil and its progeny. Moreover, the district court neglected to consider fully the impact that release of the testimony would have on future grand jury proceedings. We, therefore, REVERSE the order granting disclosure and REMAND this action so that the district court may review the transcript of Wainwright testimony in camera to determine whether the Administrator has, in fact, a compelling need for the testimony. Based upon the comments of the district court regarding the substance of the transcripts, we doubt that the Administrator can meet his burden.
 
 
 
 [1]
 Parenthetically, we note our surprise--and our disappointment--that the government failed to object to the release of the Wainwright testimony. Surely, the government must realize that the secrecy of the grand jury is a critical tool in law enforcement. Releasing immunized testimony--especially the testimony of a leader in the community--will only undermine, however slightly, the usefulness of that tool. On remand, we expect the government to fulfill its duty to defend the interests of the public by insisting that the Administrator demonstrate a particularized need for Wainwright's testimony