### In the Matter of EYECARE PHYSICIANS OF AMERICA.

#### No. 96–1295.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1996.

Decided Nov. 13, 1996.

Barry Rand Elden, Chief of Appeals, Stuart Fullerton, argued, Office of U.S. Atty., Crim. Appellate Div., Chicago, IL, for U.S.

Dan K. Webb, Steven F. Molo, argued, Todd J. Ehlman, Joseph A. Spiegler, Winston & Strawn, Chicago, IL, for EyeCare Physicians of America.

Before ESCHBACH, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

On November 15, 1994, United States government agents executed a search warrant on the premises of EyeCare Physicians of America ("EyeCare"), located at 3101 and 3115 N. Harlem in the city of Chicago, and seized a number of documents to facilitate an ongoing criminal investigation into the activities of various doctors, clinics, ambulatory surgical centers, and other entities engaged in providing health care services. Contemporaneously, the government moved to have the application and affidavit in support of the warrant sealed on the ground that premature disclosure of the application for the search warrant and affidavit filed in support could jeopardize the ongoing investigation. A United States magistrate judge determined that the search warrant material could be sealed for a two-year period (until November 15, 1996), and agreed with the government that "premature disclosure [of the search warrant material] could jeopardize an ongoing investigation." Immediately thereafter, the government offered to provide EyeCare with copies of any and all of their seized documents. The government has complied and turned over to EyeCare the documents requested.

One month after the search and seizure (December 19, 1994), EyeCare filed a motion to have the warrant application and affidavit unsealed to "assess whether to challenge the government's extraordinarily broad search.... EyeCare can make an informed and meaningful decision regarding its rights under Federal Rule of Criminal Procedure 41 only if it can review the affidavit." The government, on February 10, 1995, in response to the December 19, 1994 motion, filed another affidavit under seal, arguing

that unsealing the affidavit would provide EyeCare with a road map to the government's investigation. The affidavit includes the names of individuals who were sources of information, describes documents reviewed as part of the investigation as well as information obtained from various documents, and specifically outlines conduct which the government believes demonstrates criminal culpability. The magistrate judge, after hearing argument from the parties, denied the motion, concluding that

disclosure of the affidavit could result in breaching the *secrecy of grand jury testimony* and subpoenas, that the *privacy of implicated persons who have not been charged,* other witnesses and patients would be impaired by disclosure; that the *identity of unnamed subjects would become clear* to petitioner which disclosure could *jeopardize the investigation* in light of particular instances revealed in the government's affidavit made in opposition to the pending motion in which persons on behalf of [EyeCare] have taken actions to discourage cooperation; that *disclosure of numerous potential witnesses could result in their unwillingness to cooperate with the government;* and that the scope of the investigation would be revealed so as to give petitioners premature guidance concerning potential charges.

The magistrate judge, after considering the feasibility of disclosing a redacted version of the affidavit, stated that "redaction would entail such a large portion of the affidavit that it is not a practical alternative." EyeCare appealed the magistrate judge's denial of its motion to release the sealed documents to the district court, and the trial judge directed the government to file a draft redacted version of the affidavits for inspection by the court *in camera.* After *in camera* review of the proposed redactions as well as the affidavit of a government agent explaining its reasoning for the redactions (also under seal), and following oral argument, the district court affirmed the magistrate judge's order. The district court incorporated the magistrate judge's rationale

with the additional finding that "partial disclosure or redaction might mislead the reader to mistakenly conclude that certain persons and entities are either subjects of the investigation or are cooperating with the government."[1]

EyeCare appeals the district court's denial of its motion, arguing that the government has failed to establish that it has a compelling interest in keeping the three affidavits sealed. We affirm.

## I. EyeCare's Constitutional Arguments

■ EyeCare asserts that it has a "due process" right to review the affidavit under the Fourth Amendment. This argument is a synthesis of two independent rights, requiring analysis of each argument. The Due Process Clause of the Fifth Amendment protects EyeCare from being deprived of life, liberty or property without due process of law. Any argument based upon this section of the Fifth Amendment falls on deaf ears, for no person affiliated with EyeCare has even been indicted, much less deprived of life or liberty. Nor can EyeCare claim that it has been deprived of property, for the government has furnished copies of all its requested documents.

EyeCare points us to *In the Matter of the Search of Wag–Aero, Inc.,* 796 F.Supp. 394 (E.D.Wis.1992). Wag–Aero was an appeal of a magistrate judge's denial of a motion to unseal search warrant materials and is barren of any analysis concerning how due process was lacking (although the petitioner claimed, and the court agreed, that the government had taken property (airplane parts) during the search and had not returned them). Again, a deprivation of property is not an issue here for the government has provided EyeCare with copies of the requested seized documents. Of course, we realize it would be most advantageous and a defense attorney's dream to have knowledge of the contents of the affidavits in challenging whether the warrant was actually supported by probable cause. By the very na-

---

**1.** At this juncture, no person affiliated with Eye-Care has been indicted and the government's criminal investigation continues.

ture of a secret criminal investigation of this type, the target of an investigation more often than not remains unaware of the specific grounds upon which a warrant was issued. If preindictment disclosure of sealed warrant affidavits was required to satisfy due process (assuming there had been a predicate deprivation of life, liberty or property), the hands of law enforcement would be needlessly tied and investigations of criminal activity would be made unduly difficult if not impossible. We need not belabor the lack of merit to EyeCare's due process argument.

■ EyeCare also asserts that the Fourth Amendment recognizes a right of access to sealed affidavits. EyeCare's argument does not rest upon the terms of the Fourth Amendment, for the text of that Amendment does not address, even implicitly, the problem of lack of access to sealed search warrant affidavits.[2] The Warrant Clause of the Fourth Amendment circumscribes the *issuance* of warrants, but does not address access to the affidavits employed to support them. EyeCare relies upon the unpersuasive case of *In re Search Warrants Issued August 29, 1994*, 889 F.Supp. 296 (S.D.Ohio 1995), a district court opinion which is conclusory at best (with respect to the applicability of the Fourth Amendment) and conspicuous for its lack of analysis.[3]

## II. Federal Rule of Criminal Procedure 41(g)

■ EyeCare argues that Federal Rule of Criminal Procedure 41(g) is a codification of Fourth Amendment procedures and thus provides a fundamental right of access to search warrant affidavits. As discussed above, no provision within the Fourth Amendment grants a fundamental right of access to sealed search warrant affidavits before an indictment. We are convinced that a proper reading of Rule 41(g) does not include a constitutional right of access to sealed warrant affidavits, but rather provides an administrative framework for the exercise of the common law right of access.

The common law recognizes a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). Thus, EyeCare's right of access to the warrant affidavit is a general right held by all persons unless circumscribed by a specific court order (sealed) as in this case. Rule 41(g) is administrative in nature, and merely "facilitates observance of th[e common law] right by directing the judicial officer to file all papers relating to the search warrant in the clerk's office." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir.1989). The investigating officers and the magistrate judge have complied with Rule 41.[4] The Rule provides no time period before which the magistrate must release sealed documents filed with the clerk of the court nor does the rule say anything about access to sealed affidavits.

■ The "decision as to access [to judicial records and documents, including the duration of time they may be sealed] is one best left to the sound discretion of the trial

2. The Fourth Amendment provides:
 The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; *and no warrants shall issue, but upon probable cause, supported by oath of affirmation,* and particularly describing the place to be searched, and the persons or things to be seized. (Emphasis added).

3. The court essentially held with little explanation that the Fourth Amendment applies to sealed search warrant affidavits. While the factual distinctions between *Search Warrants* and the instant case are irrelevant to the question of whether the Fourth Amendment grants a right of access to sealed search warrant affidavits, such differences are worth noting. In *Search War-*

*rants*, the investigation had been underway for almost three years (only two years have elapsed in the present case); the search took place in the business area in the movant's home (the government searched a business in this case); and the court's opinion is not clear as to whether or not the seal of the affidavit was lifted during the *preindictment* stage of the criminal investigation (which is where we are now).

4. Rule 41(d) directs the officer seizing property under a search warrant to make the return "promptly." Compliance with this subsection of the Rule is not in question. Rule 41(g) directs the magistrate judge to file all papers in connection with the seizure of property with the clerk of the district court.

court." *Nixon*, 435 U.S. at 599, 98 S.Ct. at 1312; *Goetz*, 886 F.2d at 65. The trial court properly weighed the parties' respective rights, and our review of the affidavits convinces us that neither the magistrate judge nor the district court abused their discretion in refusing to unseal, or allow access to, the affidavits.[5]

 As previously mentioned, the magistrate judge and the district court were required to, and did, consider the potential adverse consequences of granting immediate access to the warrant affidavits. Such consequences include the likelihood that the secrecy of grand jury proceedings would be violated. *See* Fed.R.Crim.P. 6(e). Federal Rule of Criminal Procedure 6(e) codifies the centuries-old requirement that grand jury proceedings be kept secret. *Matter of Grand Jury Proceedings*, 942 F.2d 1195, 1198 (7th Cir.1991). *"Our judicial system has recognized that the proper functioning of grand jury proceedings depends upon their absolute secrecy."* *Id.* (emphasis added). *Several distinct interests are served by safeguarding the confidentiality of grand jury proceedings. "[I]f pre-indictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily."* *Lucas v. Turner*, 725 F.2d 1095, 1100 (7th Cir.1984) (emphasis added). *"Witnesses who appear before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment."* *Id.* (emphasis added).

*"Grand jury secrecy ... is as important for the protection of the innocent as for the pursuit of the guilty."* *Proceedings*, 942 F.2d at 1199 (emphasis added). *"Parties seeking grand jury transcripts ... must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."* *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979) (emphasis added). *"But one seeking disclosure of grand jury proceedings must demonstrate more than relevance.... [S]ecrecy is not broken 'except where there is a compelling necessity' for the material."* *Hernly v. United States*, 832 F.2d 980, 983–84 (7th Cir.1987) (emphasis added). *"'Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations.'"* *Id.* at 984 (citation omitted). *The "request for grand jury material [must be] more than a request for authorization to engage in a fishing expedition."* *Lucas*, 725 F.2d at 1101 (emphasis added).

 *"In a case where a particularized need is established 'the secrecy of the proceedings is lifted discretely and limitedly.'"* *Id.* "In determining whether the party requesting disclosure has met his burden, the district court has 'substantial discretion.'" *Id.* (citation omitted). "District courts that contemplate ordering disclosure must consider the possible effects upon the functioning of future grand juries." *Proceedings*, 942 F.2d

---

5. The district court's denial of EyeCare's motion to unseal could also be affirmed because the affidavits reveal the identity of informants. "The informer's privilege," which has its roots in the English Common Law, is a misnomer as it "is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); *Dole v. Local 1942, IBEW, AFL–CIO*, 870 F.2d 368 (7th Cir.1989); *United States v. Herrero*, 893 F.2d 1512 (7th Cir. 1990). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro*, 353 U.S. at 59, 77 S.Ct. at 627. "The government need not make a threshold showing that reprisal or retaliation is likely, because of the significant policy consideration behind the privilege, as well as the difficulty of such proof." *Herrero*, 893 F.2d at 1525. "The informant's privilege covers both the informant's identity *and* the contents of his communications with the government if those contents tend to reveal the informant's identity." *Id.* (emphasis added). At a minimum, the magistrate judge's and district court's refusal to disclose the sealed affidavits is justified under the informant's privilege.

at 1199. "As other courts have held, due to the dangers created by unwarranted disclosure to the safety and reputations of both grand jury witnesses and those under investigation, and indeed to the continued viability of the grand jury as an investigative tool, we do not believe the mere passage of time has significantly diminished the need for preserving the secrecy of the grand jury testimony." *Lucas*, 725 F.2d at 1107. "[T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Id.* A portion of the affidavits sought by EyeCare describe the ongoing grand jury investigation. EyeCare has filed no counter-affidavits and has failed to demonstrate a "strong showing of particularized need." *Id.* *"Bald assertions cannot replace the specific and detailed averments of fact sadly lacking in this case." Lucas*, 725 F.2d at 1105 (emphasis added). As specifically noted by the magistrate judge, disclosure of the sealed affidavits would breach the secrecy of the grand jury.

Additional consequences in disclosing the sealed affidavits include: the identity of unnamed subjects not yet charged would be revealed; there may be mistaken notions concerning who might and might not be cooperating with the government or who may be subjects; there may be misunderstandings about the parameters of the government's investigation; the privacy of the innocent and the implicated would be threatened; and the cooperation of present and potential witnesses could be compromised or influenced. We add that disclosing even a redacted version of the search warrant affidavit would enable the subjects of the investigation the opportunity to alter, remove or withhold records. We agree with the magistrate judge and the district court that disclosure of the affidavits might very likely impair the ongoing criminal investigation. We, therefore, hold that the magistrate judge and the district court did not abuse their discretion in denying EyeCare's motion to unseal the search warrant affidavits. EyeCare can challenge the contents of the affidavits at any time.

The district court's denial of EyeCare's motion to unseal is, therefore, AFFIRMED.