Keith B. BARANSKI, et al., Plaintiffs,

v.

FIFTEEN UNKNOWN AGENTS OF ATF, et al., Defendants.

No. CIV.A.3:01CV–398–H.

United States District Court,
W.D. Kentucky,
at Louisville.

March 22, 2002.

Stuart A. Benis, Columbus, OH, for plaintiffs.

John E. Kuhn, Jr., AUSA, U.S. Attorney's Office, Louisville, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

In April, 2001, federal agents searched a warehouse in Louisville, Kentucky, and seized a large number of firearms. Plaintiffs, two entities affected by the government's actions, correspondingly filed suit against Defendants, twenty one individual agents and the United States, alleging eight causes of action. Defendants have filed a variety of motions, both dispositive and otherwise, all of which Plaintiffs oppose. These motions raise interesting questions about the manner in which one may oppose or challenge government seizure of property. The Court will now consider each motion in turn.

### I.

Before ruling on the parties' motions, the Court must initially establish the relevant factual and procedural background of this complex matter. The first plaintiff, Keith Baranski, doing business as Magua Industries ("Magua"), an Ohio sole proprietorship, imports firearms and ammunition. The second plaintiff, Pars International Corporation ("Pars"), a Kentucky corporation, likewise imports firearms and ammunition and also operates a U.S. Customs High Security Bonded Warehouse ("CBW") in Louisville. The first fifteen defendants are Unknown Named Agents of the federal Bureau of Alcohol, Tobacco, and Firearms ("ATF"). Defendants sixteen through twenty one—Brian Dixon ("Dixon"), Michael R. Johnson ("Johnson"), Douglas R. Dawson ("Dawson"), Mark S. James ("James"), Karl L. Stankovic ("Stankovic"), and William J. Hoover ("Hoover")—are also agents of the ATF. The final defendant is the United States of America ("United States").

On April 10, 2001, United States Magistrate Judge Cleveland Gambill of the Western District of Kentucky issued to ATF agents a search warrant for Pars' CBW. Judge Gambill further ordered that the affidavit supporting the warrant be sealed. ATF agents executed the warrant

the next day, April 11, and seized 372 machine guns and twelve wooden crates containing firearms parts. Plaintiffs maintain that this property had been legally imported into the country, and that the search and seizure were unlawful on a number of grounds.

On June 28, 2001, Plaintiffs filed suit, generally seeking to challenge the seizure of their property and to obtain its return. The first two counts seek relief from the United States. Count One of Plaintiffs' Complaint seeks to unseal the affidavit upon which the search warrant was issued. Count Two seeks both the suppression and return of the weapons. Count Three seeks relief against the individual ATF agents, and has six different parts. Subsection (a) alleges violations of Plaintiffs' Fourth Amendment rights. Subsection (b) alleges violations of Plaintiffs' Fifth Amendment rights. Subsection (c) alleges trespass upon property and chattel. Subsection (d) alleges tortious interference with the prospective business relationship of Magua. Subsection (e) alleges tortious interference with the prospective business relationship of Pars. Subsection (f) alleges defamation.

Defendant United States has filed three motions, which the Court shall consider in the following sequential order: first, a notice of proposed substitution of parties; second, a motion to dismiss; and third, a motion to stay. Plaintiffs have filed an omnibus memorandum in opposition to each of these motions.

## II.

The United States proposes that pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, it should be substituted as the sole party defendant to all state law tort claims alleged by Plaintiffs against the individual ATF agents. 28 U.S.C. § 2679(b)(1) provides:

The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property ... arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim.... Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

Furthermore, § 2679(d)(1) provides:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

Finally, pursuant to 28 C.F.R. § 15.3(a), "[t]he U.S. Attorneys are authorized to make the certifications provided for in ... 28 U.S.C. 2679(d) ... with respect to civil actions or proceedings brought against Federal employees in their respective districts."

The United States Attorney for the Western District of Kentucky has filed with this Court a certification that defendants Dixon, Johnson, Dawson, James, Stankovic, and Hoover "were acting within the scope of their employment as officers and agents at the time of the allegedly tortious conduct described the complaint."

United States' Notice of Proposed Substitution, Ex. 1. Plaintiffs argue, however, that the requested substitution is improper until they have had adequate opportunity to obtain discovery and the Court has held an evidentiary hearing to review the U.S. Attorney's certification decision.

 "Whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Singleton v. United States,* 277 F.3d 864, 870 (6th Cir.2002) (quoting *RMI Titanium Co. v. Westinghouse Electric Corp.,* 78 F.3d 1125, 1143 (6th Cir.1996)). The challenged conduct in this case, the issuance and execution of the search warrant, occurred in Kentucky. In this state, "[a]n act is within the scope of the servant's employment, where such act is necessary to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master." *Wood v. Southeastern Greyhound Lines,* 302 Ky. 110, 194 S.W.2d 81, 83 (1946).

 This Court finds as a matter of law that to procure and execute a search warrant is within the scope of ATF agents' regular duties. Such acts enforce the criminal laws of the United States. Neither additional discovery nor an evidentiary hearing is needed to make this ruling. A certification decision is "prima facie evidence that the employee was acting within the scope of employment." *Singleton,* 277 F.3d at 871 (quoting *RMI Titanium Co.,* 78 F.3d at 1143). ATF agents are statutorily authorized to "execute and serve search warrants." 26 U.S.C. § 7608(a)(2). Even if they exceeded their lawful authority, the agents would be acting within the scope of their employment under Ken-

tucky law. *See Frederick v. Collins,* 378 S.W.2d 617, 619 (Ky.1964) ("[a] master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant") (quoting Restatement (Second) of Agency, § 245). *See also RMI Titanium,* 78 F.3d at 1143 ("[t]he mere fact that a federal employee's actions may have been unlawful ... is not enough, by itself, to find that the employee's actions were outside his authority"). No amount of discovery could substantiate Plaintiffs' assertion that the individual agents were not acting within the scope of their employment because it is never in the best interests of the United States for its agents to conduct unlawful searches and seizures. This argument both misstates the applicable standard and would essentially nullify the FTCA.

The Court therefore substitutes the United States as the sole party defendant to Plaintiffs' state law tort claims—i.e., Count Three, Subsections (c)-(f)—and dismisses these claims as filed against Defendants Dixon, Johnson, Dawson, James, Stankovic, and Hoover.

### III.

The government has also moved to dismiss all claims against the United States. Following the Court's order in *supra* Part II, this includes Count One, Count Two, and Count Three, Subsections (c)-(f).[1] The Court will address each separately.

### A.

Count One of Plaintiffs' Complaint seeks to unseal the affidavit upon which the

---

1. Plaintiffs' remaining claims—Count Three, Subsections (a)-(b)—are against the individual ATF agents, and are addressed at *infra* Part IV.

search warrant was issued. The United States argues that "the appropriate and accepted practice in the [Sixth] Circuit is to return to the Magistrate Judge when requesting that a warrant be unsealed." Defs.' Reply at 7.

The United States accurately notes that the leading cases discussing the scope of a party's right to access a sealed warrant affidavit—including two from district courts within the Sixth Circuit—all involve appellate review of a magistrate's initial denial of a motion to unseal. *See In the Matter of Eyecare Physicians of America,* 100 F.3d 514, 515–16 (7th Cir.1996); *In re Search Warrant for 2934 Anderson Morris Road, Niles, Ohio 44406,* 48 F.Supp.2d 1082, 1082–83 (N.D.Ohio 1999); *In the Matter of the Search of Up North Plastics, Inc.,* 940 F.Supp. 229, 230 (D.Minn.1996); *In re Search Warrants Issued August 29, 1994,* 889 F.Supp. 296, 297–98 (S.D.Ohio 1995). However, Plaintiffs likewise accurately respond that other cases at least indicate that a district court may hear a motion to unseal brought directly before it. *See In the Matter of Search of 1638 E. 2nd Street, Tulsa, Oklahoma v. United States,* 993 F.2d 773, 774 (10th Cir.1993); *In the Matter of the Search of Flower Aviation of Kansas, Inc.,* 789 F.Supp. 366, 367 (D.Kan. 1992). These latter decisions are, admittedly, from outside of this circuit, and do not unequivocally establish that the district court was reviewing a motion to unseal as a matter of first instance. Nevertheless, the lack of a clear directive on this question counsels that it is, at best, an unsettled issue.

The Court believes that the most useful guidance can be found in the Federal Rules of Criminal Procedure. More specifically, Fed.R.Crim.P. 41 explains the role of magistrates in the search warrant process. Rule 41(c)(1) provides that after a warrant is executed, it is returned to the issuing magistrate. Rule 41(g) further dic-

tates that the magistrate file with the clerk of the district court for the district in which any property was seized copies of the paperwork connected to the warrant, including any affidavits relied upon in issuing the warrant. These materials, like most judicial records, may then be accessed by the public. *See Up North Plastics,* 940 F.Supp. at 231. In other words, Rule 41(g) "provides an administrative framework for the exercise of the common law right of access." *Eyecare Physicians,* 100 F.3d at 517.

■ Plaintiffs do aver that Count One is based upon, *inter alia*, ". . . provision of the Federal Criminal Rule 41(g), [which] give[s] rise to the presumption of public access to search warrants and their applications." Pls.' Complaint, ¶ 41. But, the most appropriate statutory basis for bringing a motion to unseal an affidavit would appear to be Rule 41(e). *See, e.g., 2934 Anderson Morris Road,* 48 F.Supp.2d at 1082; *Up North Plastics,* 940 F.Supp. at 233. Rule 41(e) provides, in relevant part:

[a] person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion.

As the court explained in *Up North Plastics,* "[i]n such cases, the court's decision will almost always depend upon whether the affidavit submitted in support of the warrant application established probable cause. . . ." 940 F.Supp. at 233. However,

[t]he affidavit must be seen to be effectively challenged. A person whose property is seized pursuant to a search warrant, cannot decide whether he/she should make a motion under Rule 41

unless they know the basis upon which the search warrant was issued. To permit an affidavit or any documents in support of a search warrant to remain sealed against examination by the person whose property was searched deprives him of the right secured by Rule 41 to challenge that search.

*Id.* Of course, the right to examine the affidavit is not absolute, and the government may, under certain circumstances, successfully petition the court to keep the affidavit sealed. *Id.*

▪ The instant question is whether this Court has jurisdiction to hear Plaintiff's motion before it has first been brought before the issuing magistrate. The plain language of Rule 41(e) would seem to answer that question affirmatively. Other courts have interpreted a motion to unseal an affidavit to naturally accompany a Rule 41(e) motion for the return of property. Rule 41(e) states clearly that a person seeking the *return* of property "may move *the district court* for the district in which the property was seized" for its return. This Court can discern no reason why only the issuing magistrate would have jurisdiction to hear a Rule 41(e) motion to unseal an affidavit, thus severing it from a companion Rule 41(e) motion for the return of property, which may be heard by the district court.

### B.

Count Two of Plaintiffs' Complaint seeks the return of the property. Plaintiffs' legal foundation is not very clear. They assert a Fourth Amendment claim and then retreat.[2] They assert a Fifth Amendment claim without much support for it.

▪ In response to all these claims, the United States argues that Plaintiffs are not entitled to equitable relief where there is an adequate remedy at law in the civil forfeiture process. The Court agrees. Normally, one would use Fed.R.Crim.P. 41(e) to obtain return of property. However, "[a]fter the government initiates forfeiture proceedings and notifies a claimant of the proceedings, a claimant may no longer use Rule 41(e), but instead must submit to the statutory procedures governing civil forfeiture proceedings." *United States v. One 1974 Learjet 24D*, 191 F.3d 668, 673 (6th Cir.1999) (citing *Shaw v. United States*, 891 F.2d 602, 603–04 (6th Cir.1989)). Plaintiffs do not dispute that the government has filed formal forfeiture proceedings, as well as provided notice of such to Plaintiffs by both letter and publication, as required by § 1607(a). Nor do Plaintiffs dispute that they have filed a claim of ownership in response, and thus are currently contesting the forfeiture.

▪ Plaintiffs' use of the Fifth Amendment is equally unavailing at this point. To the extent Plaintiffs seek return of the property, the appropriate forum is the forfeiture action itself. The civil forfeiture statute is, in effect, a congressionally approved and constitutionally accepted method by which the government may take property without having to pay compensation to the owner. It is not an exercise of the government's power of eminent domain. *See United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 845 (8th Cir. 1999). A forfeiture action is not subject to a Fifth Amendment takings clause claim. *See Bennis v. Michigan*, 516 U.S. 442,

---

**2.** Plaintiffs sought to suppress the use of the weapons as evidence. They say that the term "suppression," as used in their complaint, "is just another way of requesting that the property seized be returned." Therefore, Plaintiffs are not actually seeking a suppression. Any motion to "suppress" evidence must be made in a proceeding in which the United States seeks to use the evidence.

452–53, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996).

In any event, in these circumstances, Plaintiffs may not seek either return of the property or compensation for it, in a separate federal action as set forth in Count Two.

### C.

 Count Three, Subsections (c)-(f) contain state law claims against the United States for: (c) trespass upon property and chattel, (d) tortious interference with the prospective business relationship of Magua; (e) tortious interference with the prospective business relationship of Pars; and (f) defamation. "It is well settled that the United States as a sovereign is immune from suit unless it has expressly waived such immunity." *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,* 845 F.2d 113, 115 (6th Cir.1988) (citing *United States v. Shaw,* 309 U.S. 495, 500–01, 60 S.Ct. 659, 84 L.Ed. 888 (1940)). "The FTCA waives the sovereign immunity of the United States with respect to tort claims, providing that '[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.'" *Singleton,* 277 F.3d at 872 (quoting 28 U.S.C. § 2764).

 But, the FTCA requires that a plaintiff must first exhaust all available administrative remedies before he or she may proceed in federal district court. *See id.* (quoting 28 U.S.C. § 2675(a)). "[T]he failure to file a timely administrative claim under the FTCA bars federal jurisdiction. . . ." *Id.* at 873 (citing *Rogers v. United States,* 675 F.2d 123, 124 (6th Cir.1982)). Plaintiffs have not presented an FTCA claim to the ATF, and, therefore, this Court lacks jurisdiction over these claims at this time.

### IV.

Count Three, Subsections (a) and (b) contain claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the named and unnamed ATF agents in their individual and personal capacities for alleged violations of Plaintiffs' Fourth and Fifth Amendment rights. The United States has moved on behalf of itself and Defendants Dixon, James, Johnson, Dawson, Stankovic, and Hoover to stay these claims to avoid interfering with the government's ongoing criminal investigation. Plaintiffs oppose this motion on the ground that indefinitely delaying their civil suit will seriously and unfairly harm their interests in the prompt adjudication of their claim.

 "The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir.1995) (citing *Federal Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 902 (9th Cir.1989); *Securities & Exchange Comm'n v. Dresser Indus.,* 628 F.2d 1368, 1375 (D.C.Cir.1980) (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)). "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence." *Dresser,* 628 F.2d at 1374. A court may, however, exercise "its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem[ ] to require such action, sometimes at the request of the prosecution, sometimes at the request of the defense.'" *Id.* (quoting *United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) (internal citations omitted)).

■ A court should review a motion to stay a civil suit pending the completion of a parallel criminal proceeding "in light of the particular circumstances and competing interests involved in the case." *Keating*, 45 F.3d at 324 (quoting *Molinaro*, 889 F.2d at 902). According to one circuit court:

> [T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administration action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.

*Dresser*, 628 F.2d at 1375–76. This analysis obviously assumes two facts not involved in the present case: first, an indictment has already been issued; and second, the criminal defendant is the movant pursuing the stay. At this point in time, Plaintiffs have not been criminally indicted and it is the United States that seeks to stay the civil proceedings.

■ "The case for staying civil proceedings is 'a far weaker one' when '[n]o indictment has been returned[, and] no Fifth Amendment privilege is threatened.'" *Molinaro*, 889 F.2d at 903 (quoting *Dresser*, 628 F.2d at 1376). This is not to say, however, that equally salient concerns are not implicated when the government moves to stay the civil suit of a plaintiff that is presently unindicted, but under active criminal investigation. In these circumstances, the primary concern is not the Fifth Amendment rights of the civil plaintiff—who is, after all, arguing that the court *allow* dual proceedings—but rather the government's interest in preventing a potential criminal defendant from exploiting the advantages of civil discovery. *See Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir.1962); *United States v. Four Contiguous Parcels of Real Property Situated in Louisville, Jefferson County, Kentucky*, 864 F.Supp. 652, 654 (W.D.Ky.1994).

Plaintiffs argue that a stay is unwarranted because without an active and formal prosecution against them, the delay sought by the government is indefinite. They say that this Court's reasoning in an earlier case denying a government motion for a stay of a civil suit applies here with equal force. *See Four Contiguous Parcels*, 864 F.Supp. at 653 (stating "it is inherently unfair for the United States to seize property and then deny claimant any effective remedy for return of the property"). The Court disagrees. In *Four Contiguous Parcels*, the government sought to stay civil forfeiture proceedings until after the conclusion of a parallel criminal case, thereby precluding the plaintiff any opportunity to seek the return of its property. The material difference in the present matter is that, as noted above, Plaintiffs may still pursue the return of their property via the civil forfeiture proceedings. The only remedy postponed by staying Plaintiffs' *Bivens* claims is potential money damages for the ATF agents' allegedly unlawful actions. Plaintiffs' interest in pursuing their *Bivens* claims is significant. However, the public interest served by maintaining the integrity of a criminal investigation into the possibly unlawful trafficking of hundreds of automatic weapons is for the moment more substantial.

The Court notes that the date of the allegedly unlawful search and seizure of

Plaintiffs' property was April 10, 2001, nearly one year ago. Only a limited stay seems warranted at this time. This Court will grant the government's request for a stay of Plaintiffs' *Bivens* claims for only three months from the date of this order. No later than the conclusion of the stay, the United States shall update the Court of the status of its criminal investigation. At the close of three months the Court will reexamine the issue of allowing Plaintiffs' *Bivens* claims to proceed.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendants have filed a number of motions. The Court has reviewed the memoranda of the parties as well as the exhibits of record. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant United States' motion to substitute itself as the sole party defendant to Plaintiffs' state law tort claims (Counts III(c)-(f)) is SUSTAINED. The individual Defendants named in those Counts are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant United States' motion to dismiss Count One of Plaintiffs' Complaint is DENIED.

IT IS FURTHER ORDERED that Defendant United States' motion to dismiss Count Two of Plaintiffs' Complaint is SUSTAINED and Count Two is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant United States' motion to dismiss Count Three, Subsections (c)-(f) of Plaintiffs' Complaint is SUSTAINED and those claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Count Three, Subsections (a) and (b) are stayed until **June 21, 2002**. The United States shall file a status report no later than that date.