**In the Matter of the Search of 8420 OCEAN GATEWAY EASTON, Maryland**

**No. 04–1603SKG.**

United States District Court, D. Maryland.

Sept. 10, 2004.

J. Joseph Bainton, John Jongmin Lee, Bainton, McCarthy LLC, New York City, for plaintiff.

## *MEMORANDUM OPINION*

GAUVEY, United States Magistrate Judge.

On April 26, 2004, the United States Government submitted to the undersigned judge an application for three search warrants for certain business and patient records located in the medical offices of Dr. James Thompson, with a supporting affidavit and an accompanying motion to seal affidavit. The basis for the motion to seal was that "the warrants have not been executed and the government does not want to disclose the identities of the complaining witnesses at this time." The Court granted the motion. Thereafter the warrants were executed.

On May 14, 2004, James P. Thompson, M.D. filed a motion to unseal the affidavit. The government has opposed the motion. A hearing was held. For the reasons set forth more fully below, the Court grants in part and denies in part the motion. While the government has stated that meaningful redaction of the affidavit is impossible, the Court disagrees and has prepared a redacted affidavit which addresses the concerns of the government while providing to Dr. Thompson the justification for the broad search of his medical offices. While one paragraph was redacted totally, ¶ 51, and substantial redaction was done to other paragraphs to protect the identity of the complaining witnesses, much of the affidavit can be unsealed, allowing Dr. Thompson to learn the basis for the significant governmental intrusion into his medical practice and to evaluate any motion under Fed.R.Crim.P. 41, without undue interference to the investigation or to the privacy of the complaining witnesses. The Court orders the government to release the redacted affidavit on September 15, 2004, unless an appeal is taken.

### *The Parties' Arguments*

Dr. Thompson has moved to unseal the affidavit arguing that he has a right under the Fourth Amendment to examine the affidavit after the search has been conducted, relying primarily on *United States v. Oliver*, 2000 WL 263954 (4th Cir. March 9, 2000) (unpublished opinion). Moreover, Dr. Thompson contends that without access to the affidavit he cannot assert his rights under Fed.R.Crim.P. 41. Until the underlying bases of the search are brought to light, counsel states that "Thompson, who had been attempting to sell the business because he is 70 and wants to retire, will be severely damaged because no one is interested in purchasing the practice now because of the search" and because he cannot know whether he needs to file a Rule 41(e) motion. (Paper No. 5 at 9).

The government denies that the Fourth Amendment confers a right to examine a search warrant affidavit, relying primarily on *In the Matter of Eyecare Physicians of America*, 100 F.3d 514 (7th Cir.1996), and dismisses the *Oliver* opinion as without precedential or persuasive value and factually distinct. The government maintains that Rule 41(e) offers Dr. Thompson no relief here. Additionally, in the briefing and argument, the government expanded upon the original reasons for sealing its motion. In an *ex parte* affidavit of the case agent, the government states that unsealing would also disclose the government's legal theories and results of its investigation; interfere with the investigation in that loyal employees and patients could be contacted and coached; discourage other witnesses from cooperating for fear of possible retaliation; have a detrimental effect on the well-being and business reputation of the complaining wit-

nesses; and identify unnamed, potential subjects and targets. These reasons, the government argues provide compelling public interests to keep the affidavit sealed at least until December 7, 2004. Finally, the government rejects the feasibility of disclosure of more than a fraction of the affidavit.[1]

### Analysis

■ The Court finds that there is a Fourth Amendment constitutional right to examine the search warrant affidavit.[2] While the right to the search warrant affidavit is not absolute, denial is justified post search only on a demonstration of compelling governmental interests, which interests cannot be served by a less restrictive means than a complete withholding. The Court has concluded that the government has failed to present compelling governmental interests in this case for the withholding of the search warrant affidavit, and even if such compelling governmental interests had been presented, the government has failed to demonstrate that a limited redaction of the affidavit cannot adequately address its legitimate concerns.

In *Baltimore Sun Company v. Goetz*, 886 F.2d 60 (4th Cir.1989), the Fourth Circuit found a pre-indictment right of access to search warrant affidavits under common law, while rejecting a First Amendment right. "[T]he common law qualified right of access to the warrant papers is committed to the sound discretion of the judicial officer who issued the warrant." *Id.* at 65. The right of access yields only when the government can demonstrate that "sealing is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 65–66 (internal quotations omitted). In rejecting any First Amendment right, the Court noted that

> [t]he distinction between the rights afforded by the first amendment and those afforded by the common law is significant. A first amendment right of access can be denied only by proof of a compelling governmental interest and proof that the denial is narrowly tailored to serve that interest. In contrast, under the common law the decision to grant or deny access is left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.

*Id.* at 64 (citations and internal quotations omitted).

In *U.S. v. Oliver*, 2000 WL 263954 (4th Cir. March 9, 2000), the Court was faced, not by the media's assertion of right to access sealed warrant documents under the First Amendment as in *Goetz*, but a defendant's motion to unseal an affidavit under the Fourth Amendment. The Court declared that: "[a] defendant is entitled under the Fourth Amendment to examine the affidavit that supports a warrant after the search has been conducted," but also acknowledged the right was not "absolute." *Id.* at *2. Citing two lower court

---

1. The government opposed disclosure of the contents of the affidavit, except for paragraphs 1–4, 7–19, 75–76, 79–80, 83–84 and 87A.

2. The Court agrees with the government that as amended, Fed.R.Crim.P. 41 offers little remedy to Dr. Thompson here where he has not been deprived of use of his seized property. However, Fed.R.Crim.P. 41(e) does anticipate access to the affidavit to allow an indi-

vidual to effectively exercise his rights under Fed.R.Crim.P. 41. At least one court has, however, found that access is not essential to the exercise of rights under Rule 41. *See United States v. East Side Ophthalmology*, 1996 WL 384891 (S.D.N.Y. July 9, 1996) (Court decided a Rule 41(g) motion for return of the property without unsealing of affidavit; but on *in camera* inspection of affidavit to determine whether there was probable cause).

opinions, the Fourth Circuit adopted the standard applicable to First Amendment rights discussed in the *Goetz* case in evaluating the Fourth Amendment right at issue before it. "The right of access may be denied only where the Government demonstrates (1) that a compelling governmental interest requires the materials be kept under seal and (2) there is no less restrictive means, such as redaction, available." *Id.* (quoting *In re Search Warrants Issued Aug. 29, 1994,* 889 F.Supp. 296, 299 (S.D.Ohio 1995)) (internal quotations omitted).

Of course, the Court acknowledges the government's position that *U.S. v. Oliver* does not have precedential value;[3] however, the holding in *Oliver* is consistent with the published opinion in *Goetz* and other federal decisions addressing the issue. *See In re the Search of Up N. Plastics, Inc.,* 940 F.Supp. 229 (D.Minn.1996); *In re Search Warrants* (concluding that a person whose property is seized pursuant to a search warrant has a right under the warrant clause of the Fourth Amendment to inspect and copy affidavit upon which the warrant was issued).

The government relies on the Seventh Circuit opinion in *In re Eyecare Physicians of America,* 100 F.3d 514 (7th Cir. 1996). That decision rejected a Fourth Amendment right to access, finding that "[t]he Warrant Clause of the Fourth Amendment circumscribes the *issuance* of warrants, but does not address access to affidavits employed in support of them." *Id.* at 517 (emphasis original).

Recognizing only a common law right of access, the Court in *EyeCare* appeared to place the burden on the target to demonstrate its compelling need, *id.* at 518,[4] rather than on the government, as the Fourth Circuit did in *Goetz* and *Oliver* where constitutional rights were implicated. This appears incongruous with the functioning

---

**3.** Under the rules of the Fourth Circuit, unpublished opinions are not precedential. *Hogan v. Carter,* 85 F.3d 1113, 1118 (4th Cir. 1996). *See also United States v. Ruhe,* 191 F.3d 376, 392 (4th Cir.1999) (holding that unpublished opinions are not binding as precedent in the Fourth Circuit). Absent unusual circumstances, the Fourth Circuit will not cite to unpublished dispositions. 4th Cir. R. 36(c). Citation of the Fourth Circuit's unpublished dispositions in the district courts within the Circuit is also disfavored. *Id.*

**4.** Moreover, the facts in *EyeCare* are different than here, making it inappropriate authority on the further question of compelling need. In *EyeCare,* the government argued that disclosure would violate the secrecy of grand jury proceedings. *Id.* at 518. Unlike search warrant affidavits, there is developed law that the person seeking disclosure of grand jury materials bears the burden of demonstration of particularized need. However, there has been no importation of this approach to other judicial records. Moreover, while the *EyeCare* affidavit described an ongoing grand jury investigation, the subject affidavit does not.

The Seventh Circuit also relied on the "informer's privilege" as a basis for sealing. This is a powerful argument, at least for redaction. As the Court stated, the rule ordinarily is that "the government need not make a threshold showing that reprisal or retaliation is likely, because of the significant policy consideration behind the privilege, as well as the difficulty of such proof." *United States v. Herrero,* 893 F.2d 1512, 1525 (7th Cir.1990) (quoting *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)). It is the party seeking disclosure who bears the burden of proving that disclosure "is essential to a balanced measure of the issues and the fair administration of justice." *Dole v. Local 1942, IBEW,* 870 F.2d 368, 372 (7th Cir.1989). But given the Court's decision on the effectiveness of redaction in this case, the target's likely suspicion if not knowledge of the identity of the complaining witnesses since the April search coupled with the absence of any hint of reprisal or retaliation, the concerns of the informer's privilege are satisfactorily addressed.

of a democracy where openness must be the rule, secrecy the carefully limited exception. Accordingly, the Court finds that there is a constitutional right under the Fourth Amendment to examine the affidavit in support of a search affidavit after execution and that the government, not the target, must demonstrate compelling government interests in keeping the affidavit under seal and that no less restrictive means, such as redaction, is available.

Thus, the test here is not simply a weighing of relative need or inconvenience of the parties.[5] Rather, the government has the burden of demonstrating a compelling governmental interest in the continued sealing and the absence of a less restrictive means, such as redaction. The Court finds the government has not met its burden here.

The courts have established in effect a presumption of transparency of government action even in the area of criminal investigations where common law and especially constitutional rights are implicated. The target is not charged with demonstrating his or her urgent need for the affidavit or irreparable injury in its denial. Rather, the burden is squarely placed on the government.

The government's interests must be compelling to diminish the bedrock principle at issue here. The court stated in *In re Search Warrants Issued Aug. 29, 1994*:

> ...if citizens are guaranteed by the Fourth Amendment the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," it is inherently a part of that right that they be allowed to know whether the Fourth Amendment's

---

5. Dr. Thompson is correct that the plain language of Fed.R.Crim.P. 41(e) allows him to file a motion challenging the search and seizure as illegal, as without probable cause, prior to return of any indictment. *See In re Grand Jury Subpoena Duces Tecum Issued to Roe & Roe, Inc.*, 49 F.Supp.2d 451, 453 (D.Md.1999). Moreover, the legislative history of Rule 41 supports a presumption in Rule 41 that targets will generally learn the basis for the government's invasive actions after the search. Fed.R.Crim.P. 41(c), advisory committee's note to 1972 Enactment ("A person who wishes to challenge the validity of a search warrant has access to the affidavits upon which the warrant was issued.") While the Court agrees that a target has a constitutional right to review the affidavit to learn the basis for the intrusive government action and evaluate the filing of a Rule 41(e) motion, resort to Rule 41(e) is highly unlikely to result in any benefit to Dr. Thompson here. First, after the amendments of 1989, a successful motion under Fed.R.Crim.P. 41(e) does not effect suppression of the returned property at a later hearing or trial. As noted in the Advisory Committee Notes to the 1989 Amendments to the Rule:

> Rule 41(e) is not intended to deny the United States the use of evidence permitted by

the Fourth Amendment and federal statutes, even if the evidence might have been unlawfully seized. *See, e.g., United States v. Calandra*, 414 U.S. 338, 349 n. 6, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ("Rule 41(e) does not constitute a statutory expansion of the exclusionary rule.")

As further noted: "As amended, Rule 41(e) avoids an all or nothing approach whereby the government must either return records and make no copies or keep originals notwithstanding the hardship to their owner." Fed.R.Crim.P. 41, Advisory Comm. Notes, 1989 Amend. Where, as here, the government has not deprived the target of use of his property, relief under Fed. R. Cr. P. 41 prior to an indictment is rare.

Second, "motions to return are treated with caution and restraint, and a motion will be dismissed for want of equity if the moving party has an adequate remedy otherwise or if he cannot show irreparable injury." 3A *Charles A. Wright, Nancy J. King & Susan R. Klein, Federal Practice and Procedure:* Criminal 3d § 673 (footnotes omitted). While the Advisory Committee Notes holds out the possibility that "equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized," *id.*, there are a dearth of cases which have done so in the investigative phase.

mandate of probable cause, supported by oath or affirmation, has been satisfied. While it is not an unqualified right, it is nevertheless a right which should be carefully preserved.

889 F.Supp. 296, 301 (S.D.Ohio 1995).

■ Courts have acknowledged that some of the grounds that the government urges here are compelling interests, at least in theory. But, the Fourth Circuit also ruled that "[c]onclusory assertions are insufficient to allow review; specificity is required." *Goetz*, 886 F.2d at 66. *Accord Up North Plastics*, 940 F.Supp. 229, 233 (D.Minn.1996). ("More than a conclusory allegation of an ongoing investigation is required, however. The government must make a specific factual showing of how its investigation will be compromised by the release of the affidavit to the person whose property was seized.")

■ The government properly has provided an *ex parte* affidavit expanding, to some extent, its general assertions that disclosure of the affidavit will interfere with the investigation and reveal the identity of informants but does not demonstrate "a compelling governmental interest" making sealing "essential." *Goetz*, 886 F.2d at 64, 65. First, as to the informants—whose identities need not in any event be revealed—the affidavit certainly provides no hint of physical danger to them, or even harassment or intimidation. *Cf. Goetz*, 886 F.2d at 64 ("For example, the affidavit may ... reveal the identity of informers whose lives would be endangered."). Moreover, there is little question given the size of the practice (and the size of the community) that Dr. Thompson knows or strongly suspects who might have provided information since the day of the search in April 2004. Yet, no factual allegation of any inappropriate action against the complaining witnesses has been made. Similarly, while the government raises the hypothetical possibility that "[i]nformation contained in the affidavit can afford the opportunity for individuals, especially loyal, long-time employees, to conform their version of events" and that "[p]atients can be contacted and 'coached' to help an admired and respected physician," there is no factual basis for such a concern set out in the affidavit. (Paper No. 9 at 6–7). As stated in *Up North Plastics*, because news of the searches had already circulated throughout the small industry in which Up North Plastics operated, "[t]o the extent that any witnesses might tailor their testimony, those persons have already done so." 940 F.Supp. at 234. The same is true here, where almost six months have elapsed since the search.

The government also argues that because the investigation is in its earlier stages all possible subjects and targets may not have been identified. However, the investigation is well underway, having commenced three months prior to the subject search and almost six months have elapsed since the search. All documents have been seized. The identification of key participants and witnesses certainly has occurred. There has been more than sufficient time to interview key witnesses and "lock in" their testimony. As to disclosure of the government's legal theories, there is no assertion of any novel legal theories or prosecutorial approach at risk of exposure. Given the nature of Dr. Thompson's profession and the nature of the documents seized and the plain statutory and regulatory requirements, there would appear to be little mystery as to the government's investigative approach and interests.

As to the results of the analysis that the government has completed, the Court fails to see how release of those results would compromise or interfere with the investigation. The government has seized all the doctor's patient and business records;

they cannot be changed somehow in response to this information. The evidence is frozen. The analysis seems straightforward—a number crunching exercise, not implicating expert opinion or sophisticated evaluation. And, of course, that analysis did indeed contribute part of the probable cause urged upon the undersigned.

The government here recognizes, as do the cases, that the sealing should only be for a "reasonable time." That reasonable time seems to be exceeded here where the investigation of a single medical practice seems well underway (if not essentially completed) and no facts can be offered that release of the affidavit compromises the investigation in any material way. *In re Search Warrant for Secretarial Area Outside of Gunn,* 855 F.2d 569, 574 (8th Cir.1988) (holding a "substantial probability" that an ongoing criminal investigation would be severely compromised if sealed documents were released provided a compelling reason for keeping those documents sealed). In another sealed affidavit case, *In re Wag–Aero, Inc.,* 796 F.Supp. 394 (E.D.Wis.1992), the Eastern District of Wisconsin did not accept the government's assertion that disclosure "could have" an adverse effect on its ongoing investigation. The judge concluded "that the heavy cloak of secrecy has been misapplied in this case, and the order which permits prolonged sealing is clearly erroneous." *Id.* at 395.

In the instant case, the government argued that before employees and patients could bring their version of events into agreement, the government should be able to review the materials seized during the search, to prepare to interview witnesses, or to take them before the grand jury, to determine all the possible targets and subjects, and to otherwise conduct its investigation." (Paper No. 9 at 7). The government appears to argue for total secrecy until indictment. The cases do not read the Constitution as sanctioning such

sweeping government prerogative. If the pendency of the criminal investigation here constitutes a compelling reason then essentially any investigation would. In cases where disclosure was denied, there were strong bases for continued sealing—bases not present here. In *EyeCare,* 100 F.3d at 518, for example, the affidavit included a description of the grand jury investigation. There is no such description alleged here. In *Flower Aviation of Kansas, Inc.,* 789 F.Supp. 366, 368–69 (D.Kan.1992), the Court found, *inter alia,* that evidence had been destroyed between the execution of first and second warrants, that the information in the affidavits was "sensitive," and that the court, having considered redaction, found that this method would not protect the identities of the various individuals. Here, there is no charge of destruction of evidence nor any claim of the sensitivity of information beyond an objection to disclosure of the results of completed statistical analysis of documents. In *Searches of Semtex Industrial Corp.,* 876 F.Supp. 426, 429 (E.D.N.Y.1995), the court denied disclosure due to the "complex, multi-state" nature of the investigation and the use of undercover agents and cooperators in the investigation. The investigation here is not of that complexity or breadth and while there are "complaining witnesses," they are not undercover agents, with the natural heightened concern for personal safety such a situation raises.

In *Goetz,* the Court gave as examples of situations where an affidavit may need to be sealed after execution and in some instances after indictment: descriptions of "continuing investigations," disclosure of "information gleaned from ongoing wiretaps," and identification of "informers whose lives would be endangered." *Goetz,* 886 F.2d at 64. Other than a description of the ongoing investigation, none of the *Goetz* examples pertain here, and the

Court has concluded that revealing completed records analysis done in the investigation does not materially compromise or interfere with the investigation. The affidavit does not set out future, or even ongoing aspects of the pending investigation.

However, even if the grounds offered here are deemed compelling (and the Court is not prepared to say they are), the government must also demonstrate that there is no less restrictive means, such as redaction, available. *Oliver,* 2000 WL 263954 at *2 (quoting *Search Warrants Issued Aug. 29, 1994,* 889 F.Supp. at 299); *see also Goetz,* 886 F.2d at 65–66 ("The judicial officer may deny access when sealing is essential to preserve higher values and is narrowly tailored to serve that interest. In that event, the judicial officer must consider alternatives to sealing the documents. This *ordinarily* involves disclosing some of the documents or giving access to a redacted version.") (citations and internal quotations omitted) (emphasis added).

The Fourth Circuit observed in *Washington Post v. Hughes,* 923 F.2d 324, 331 (4th Cir.1991), a First Amendment sealing case, that "the ready resort to suppression is for societies other than our own; an accommodation of competing values remains the commendable course." The Court believes that redaction addresses both the interests of Dr. Thompson and the interests of the government and constitutes an appropriate "accommodation of competing values." *Id.*

For these reasons, the motion is granted in part and denied in part and the government is to produce the redacted affidavit to Dr. Thompson on September 14, 2004, unless an appeal is taken.